## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| TERRY HARRIS, Individually and on Behalf of All Others Similarly Situated,<br><br>*Plaintiff*,<br><br>v.<br><br><br>MEDTRONIC  INC., MEDTRONIC USA, INC.,<br>*Defendants*. | Case No. _____<br><br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Terry Harris ("Plaintiff"), on behalf of himself and all others similarly situated, files this Class Action Complaint ("CAC") against Defendants Medtronic Inc. and Medtronic USA, Inc. ("Defendant", "Defendants", or "Medtronic"), and in support states the following:

### NATURE OF THE SUIT

1.   This is a class action lawsuit by Plaintiff, individually and on behalf of others who purchased Implantable Cardioverter Defibrillators (ICDs) and Cardiac Resynchronization Therapy Defibrillators (CRT-Ds) (collectively "Devices") manufactured, imported, sold, marketed, labeled, and distributed by Defendants.

2.   Plaintiff brings this action because of Defendants' negligent failure to ensure the quality and safety of their Devices. Defendants' negligent failure led to the recall of the Devices. Specifically, the recalled Devices include the following[1]:

---

[1] https://www.fda.gov/safety/industry-guidance-recalls/recalls-background-and-definitions

(a)    Cobalt XT, Cobalt, Crome Devices;

(b)    Claria MRI, Amplia MRI, Compia MRI, Viva, and Brava CRT-Ds;

(c)    Visia AF, Visia AF MRI, Evera, Evera MRI, Primo MRI, and Mirro MRI ICDs

3.    Defendants manufacture, design, import, advertise, label, distribute, market, and sell many types of medical equipment including surgical devices, medical instruments, apparatus, respiratory monitoring systems and medical supplies.[2] The above-named defibrillators are part of a Class I recall, which means that use or exposure to the recalled Devices may result in serious injury or death.[3]

4.    Defendants' Devices "are implantable cardiac devices that are intended to monitor and regulate heart rate and rhythm."[4] A properly working device will detect any irregular heartbeat and produce an electric shock to restore a normal heartbeat pattern. These defibrillators have been recalled because they contain a glassed feedthrough. A glassed feedthrough "may deliver low or no energy output when high voltage therapy is needed due to inappropriate activation of the Short Circuit Protection (SCP) feature."[5] A defibrillator that malfunctions in this manner during a life-threatening event could lead to serious injury including cardiac arrest or death.[6]

5.    These malfunctioning devices pose a significant and severe health risk to consumers, such as Plaintiff and the putative class, who purchased and implanted Defendants' defibrillators.

---

[2] https://www.medtronic.com/us-en/patients/treatments-therapies.html
[3] https://www.fda.gov/safety/industry-guidance-recalls/recalls-background-and-definitions
[4] *See* FDA warns consumers of the medical device recall FOOD & DRUG ADMIN. (July 18, 2023), located at https://www.fda.gov/medical-devices/medical-device-recalls/medtronic-recalls-implantable-cardioverter-defibrillators-icds-and-cardiac-resynchronization-therapy
[5] *Id.*
[6] https://pubmed.ncbi.nlm.nih.gov/15851191/

6.    Plaintiff and the putative class suffered economic damages due to Defendants' misconduct (as set forth below) and seek injunctive relief, monetary damages, and restitution for the full purchase price of the medical devices they purchased. Plaintiff alleges the following based upon personal knowledge as well as investigation by counsel, and as to all other matters, upon information and belief. Plaintiff further believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## JURISDICTION AND VENUE

7.    This Court possesses subject-matter jurisdiction to adjudicate the claims set forth herein under the provisions of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) there are members of the Class who are diverse from Defendant, and (4) there are more than 100 class members.

8.    This Court has general personal jurisdiction over Defendants because it has its principal place of business located in this judicial district, has conducted substantial business in this judicial district, and intentionally and purposefully placed the devices into the stream of commerce within this district and throughout the United States.

9.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants are headquartered in this district, transact business in this district, are subject to personal jurisdiction in this district, and therefore are deemed to be citizens of this district. Given that Defendant's headquarters are located within this district, the design, approval, and distribution process of the Devices occurred or originated within this District. Additionally, Defendants have advertised in this district and have received substantial revenue and profits from its sales of

devices in this district; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

## PARTIES

### A.    PLAINTIFF

10.  Plaintiff Terry Harris is a citizen and resident of Georgia. Plaintiff lives in Union City, GA. Union City is located within Fulton County, GA.

11.  In 2018, Plaintiff purchased, and had implanted in him, an Implantable Cardioverter Defibrillator, with model number DVFB1D1 and serial number CWG205123H, from Doctor Patrick Egbe at South Fulton Medical Center in Fulton County, GA. During that time, based on the false and misleading claims by Defendants, Plaintiff was unaware that Defendants' medical devices were defective.

12.  Plaintiff purchased Defendants' defibrillator on the assumption that the products were safe, effective, and operated in the appropriate manner, as advertised.

13.  Plaintiff would not have purchased Defendants' medical device had he known there was a risk the product may be defective and cause serious injuries or death. As a result, Plaintiff suffered injury in fact when he spent money to purchase the medical device he would not otherwise have purchased absent Defendants' misconduct and failure to adhere to current good manufacturing practices, as alleged herein. Had Plaintiff known of the dangerous and defective nature of Defendants' defective Devices, Plaintiff would not have purchased Defendants' Device.

14.  Plaintiff also suffered personal injury as a result of use of the Device. Further, Plaintiff is at risk of additional extensive medical procedures in order to rectify the defective Device.

### B.    DEFENDANTS

4

15.  Defendant Medtronic Inc. is, and at all times relevant to this action, a Minnesota- based corporation, with its principal place of business located at 710 Medtronic Parkway in Minneapolis, Minnesota. According to the company's website, Medtronic Inc. "applies biomedical engineering in the research, design, manufacturing and sale of instruments or appliances that are designed to alleviate pain, restore health, and extend life."[7]

16.  Defendant Medtronic USA, Inc. is, and at all times relevant to this action was, a Minnesota- based corporation with its principal place of business located at 710 Medtronic Parkway in Minneapolis, Minnesota.

17.  Defendants have a history of producing faulty products. In addition to the current Recall, in 2018, Defendants produced several products with similar defects, many of which posed a deadly risk when improperly functioning. As stated by Defendants (Included as "Exhibit A"): "This letter is to inform you of a voluntary recall affecting 752 Cardiac Resynchronization Therapy Defibrillators (CRT-Ds) and Implantable Cardioverter Defibrillators (ICDs) (see Appendix A) that may have undergone a specific sequence of manufacturing processes that could lead to an out-of-specification internal gas environment. This may introduce a risk for internal arcing during high-voltage charging, resulting in immediate and permanent loss of device functionality, including pacing and high-voltage therapy."[8]

18.  As shown above, Defendants have a history of producing defective Devices that are needed and used in the most critical of life-saving situations. Without a properly functioning Device, consumers, such as Plaintiff, could die.

## FACTUAL ALLEGATIONS

---

[7] https://www.medtronic.com/us-en/our-company/mission.html
[8] Exhibit A

5

19. Plaintiff had his Implantable Cardioverter Defibrillator surgically implanted on June 20, 2018.

20. To reiterate the uses of the Devices:

    a) Medtronic Implantable Cardioverter Defibrillators (ICDs) are intended to be used in the following manner: (1) monitor heart rhythm 24 hours a day; and (2) send small painless electrical signals to correct heart rate.[9]

    b) Medtronic Cardiac Resynchronization Therapy Defibrillators (CRT-Ds) are intended to be used in the following manner: send small electrical impulses to both lower chambers of the heart to help them beat together in a more synchronized pattern. These electrical impulses are meant to improve the heart's ability to pump blood and oxygen to the body.[10]

21. After these Devices are implanted, they are monitored by an external computer called a programmer. The external computer is typically located at the individual's doctor's office.[11]

22. On May 10, 2023 Defendant Medtronic first issued a statement on their website concerning its Devices, stating; "Medtronic is informing physicians of a potential for reduced-energy or no-energy high-voltage therapy in its implantable cardioverter defibrillators (ICDs) and cardiac resynchronization therapy defibrillators (CRT-Ds) manufactured after July 2017."[12]

---

[9] https://www.medtronic.com/us-en/patients/treatments-therapies/icd-devices.html
[10] *Id.*
[11] *Id.*
[12] https://news.medtronic.com/Medtronic-Statement-Implantable-Cardioverter-Defibrillators,-Cardiac-Resynchronization-Therapy-Defibrillators

23.  Additionally, Medtronic stated they were "aware of 27 devices out of ~816,000 distributed worldwide, as of April 10, 2023, that have experienced a reduced or no-energy high-voltage therapy."[13]

24.  As of July 18, 2023, there have been 28 incidents and 22 injuries reported due to the failure of the Devices.[14]

25.  In addition to the 2018 incident, as described earlier in Paragraph 17, MedTronic has had to recall these similar products in 2022. In this incident, nearly 90,000 devices were recalled.[15]

26.  Then, on May 10, 2023, the U.S. Food and Drug Administration ("FDA") issued a statement "The FDA has identified this as a Class I recall, the most serious type of recall."[16] The FDA highlighted that "use of these devices may cause serious injuries or death."[17]

27.  According to the U.S. Food and Drug Administration, Medtronic initiated the voluntary recall on May 10, 2023, but it was not posted until June 16, 2023.[18]

28.  As documented from the paragraph directly above, as well as MedTronic's 2018 failures, it is clear to see that MedTronic has a propensity to produce defective products and withhold knowledge of the defective products to the most vulnerable persons imaginable.

## CLASS ALLEGATIONS

29.  Plaintiff brings this action on behalf of himself and all other similarly situated class members (the "Class" or "Nationwide Class") pursuant to Rule 23(a) and Rule 23(b)(3) of the

---

[13] *Id.*
[14] https://cardiovascularbusiness.com/topics/clinical/heart-rhythm/medtronic-fda-recall-implantable-heart-devices-22-injuries
[15] https://cardiovascularbusiness.com/topics/clinical/heart-rhythm/fda-announces-recall-nearly-88000-implantable-cardiac-devices-due-risk
[16] https://www.fda.gov/medical-devices/medical-device-recalls/medtronic-recalls-implantable-cardioverter-defibrillators-icds-and-cardiac-resynchronization-therapy
[17] *Id.*
[18] https://www.accessdata.fda.gov/scripts/cdrh/cfdocs/cfres/res.cfm?id=200628

Federal Rules of Civil Procedure. Plaintiffs seek class certification on behalf of the class defined

as follows (the "Class"):

> **Nationwide Class**
> All persons in the United States who purchased or used an Implantable
> Cardioverter Defibrillators or Cardiac Resynchronization Therapy Defibrillators
> that were distributed or sold by Medtronic from October 2017 through June 2023.

30.  In the alternative, Plaintiff brings this action on behalf of himself and all other similarly

situated consumers pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil

Procedure and seeks certification of the following Sub-Class ("Georgia Sub-Class"):

> **Georgia Sub-Class**
> All consumers who purchased or used Implantable Cardioverter Defibrillators or
> Cardiac Resynchronization Therapy Defibrillators that were distributed or sold
> by Medtronic from October 2017 through June 2023 for personal medical use.

31.   Excluded from the Class are any Defendants, any parent companies, subsidiaries,

and/or affiliates, officers, directors, legal representatives, employees, co-conspirators, all

governmental entities, and any judge, justice or judicial officer presiding over this matter.

32.   Together, the above-mentioned Georgia Subclass and Nationwide shall be collectively

referred to as the "Classes" or "Class". Proposed Members of said Classes will be referred to as

"Class Members", or otherwise referenced as "members of the Class".

33.   **Numerosity:** The members of the Class are so numerous that joinder of all members

of the Class is impracticable. Plaintiff is informed and believes that the proposed Class/Sub-

Classes contains thousands of purchasers who have been damaged by Defendants' conduct as

alleged herein. The precise number of Class members is unknown to Plaintiff at this time.

34.   **Typicality:** Plaintiff's claims are typical to those of all Class members because

members of the Class are similarly injured through Defendants' uniform misconduct described

above and were subject to Defendants' deceptive claims that there have been no reports of

permanent patient harm or deaths due to this issue in the affected population.[19] Plaintiff is advancing the same claims and legal theories on behalf of himself and all members of the Class/Sub-Class.

35.    **Commonality:** Plaintiff's claims raise questions of law and fact common to all members of the Class, and they predominate over any questions affecting only individual Class members. The claims of Plaintiff and all prospective Class members involve the same alleged defect. These common legal and factual questions include the following:

(a)    Whether Defendants' Devices are defective due to the glass feedthrough;

(b)    Whether Defendants owed a duty of care to Plaintiff and the Class;

(c)    Whether Defendants knew or should have known that the recalled Devices were defective;

(d)    Whether Defendants wrongfully represented and continue to represent that there have been no deaths due to this issue;

(e)    Whether Defendants wrongfully represented and continue to represent that replacing the recalled Devices creates a greater issue of risk of complications;

(f)    Whether Defendants' omissions are true, or are misleading, or objectively reasonably likely to deceive;

(g)    Whether the alleged conduct constitutes violations of the laws asserted;

(h)    Whether Defendants' alleged conduct violates public policy;

---

[19]https://news.medtronic.com/Medtronic-Statement-on-FDA-Classification-of-Voluntary-Action-on-Implantable-Cardioverter-Defibrillators,-Cardiac-Resynchronization-Therapy-Defibrillators

(i)     Whether Defendants' representations in advertising, warranties, packaging and/or labeling are false, deceptive, and misleading;

(j)     Whether those representations are likely to deceive a reasonable consumer;

(k)     Whether a reasonable consumer would consider the risk of implanting a defective product as a material fact when purchasing the Devices;

(l)     Whether Defendants had knowledge that their representations were false, deceptive and misleading;

(m)    Whether Defendants were unjustly enriched as a result of its marketing, advertising, and/or selling of the Devices;

(n)     Whether Defendants breached their express warranties;

(o)     Whether Defendants breached their implied warranties;

(p)     Whether Defendants engaged in unfair trade practices;

(q)     Whether certification of any or all of the classes proposed herein is appropriate under Fed. R. Civ. P. 23;

(r)     Whether Plaintiff and the Class members are entitled to damages and/or restitution and the proper measure of that loss; and

(s)     Whether an injunction is necessary to prevent Defendants from continuing to market and sell defective Devices.

36. **Adequacy:** Plaintiff and his counsel will fairly and adequately protect and represent the interests of each member of the class. Plaintiff has retained counsel experienced in complex litigation and class actions. Plaintiff's counsel has successfully litigated other class action cases similar to that here and has the resources and abilities to fully litigate and protect the interests of

the class. Plaintiff intends to prosecute this claim vigorously. Plaintiff has no adverse or antagonistic interests to those of the Class, nor is Plaintiff subject to any unique defenses.

35. **Superiority:** A class action is superior to the other available methods for a fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by Plaintiff and the individual Class members is relatively small compared to the burden and expense that would be entailed by individual litigation of their claims against Defendants. It would thus be virtually impossible for Plaintiff and Class members, on an individual basis, to obtain meaningful and effective redress for the wrongs done to them. Further, it is desirable to concentrate the litigation of the Class members' claims in one forum, as it will conserve party and judicial resources and facilitate the consistency of adjudications. Plaintiff knows of no difficulty that would be encountered in the management of this case that would preclude its maintenance as a class action.

36. The Class also may be certified because Defendants have acted or refused to act on grounds applicable to the Class, thereby making appropriate final declaratory and/or injunctive relief with respect to the members of the Class as a whole.

37. Plaintiff seeks preliminary and permanent injunctive and equitable relief on behalf of the entire Class, on grounds generally applicable to the entire Class, to enjoin and prevent Defendants from engaging in the acts described above, such as continuing to market and sell Devices that may be defective. Further, Plaintiff seeks for Defendants to provide a full refund of the purchase price and all relative medical bills concerning implantation of the ICDs and/or CRT-Ds to Plaintiff and the Class members.

38. Unless a Class is certified, Defendants will retain monies received as a result of their conduct that was taken from Plaintiff and the Class members. Notwithstanding Defendant

Medtronic's voluntary recall, unless a Class-wide injunction is issued, Defendants may continue to commit the violations alleged and the members of the Class and the general public will continue to be misled and placed in harms' way.

## ESTOPPEL AND TOLLING OF THE STATUTE OF LIMITATIONS

39.  Plaintiff did not discover, and could not have discovered through the exercise of reasonable diligence, the existence of the claims sued upon herein until immediately prior to commencing this civil action.

40. Due to the Defendants' acts of fraudulent concealment, Defendants are estopped from relying on any statutes of limitations or repose. Such acts include Defendants' intentional concealment from Plaintiff and the general public that the Devices are defective and harmful while continuing to market the products with the adverse effects described in this Complaint.

41. Given Defendants' affirmative actions of concealment by failing to disclose information about the defects known to it, but not the public, and because Plaintiff could not reasonably know that the products were defective, Defendants are estopped from relying on statutes of limitations that may be applicable to the claims asserted in this Complaint.

42. By reason of the foregoing, the claims of Plaintiff and the Class are timely under any applicable statute of limitations, pursuant to the discovery rule, the equitable tolling doctrine, and fraudulent concealment.

## FIRST CAUSE OF ACTION
**Violation of the Minnesota False Statements in Advertising Act**
**Minn. Stat. §325F.67 et seq.,**
**(On Behalf of Plaintiff and the Nationwide Class and Against All Defendants,**
**Alternatively on Behalf of the Georgia Sub-Class)**

43.  Plaintiff incorporates Paragraphs 1-42 as if fully set forth herein.

44.   Plaintiff brings this Count individually and on behalf of the Classes who purchased the Devices.

45.   Defendants produced and published advertisements and deceptive misleading statements through formal advertising, sales representatives, and physicians on the safety and effectiveness of the Devices.

46.   Defendants continue to represent or otherwise disseminate misleading information about the serious risks associated with the use of their devices during a life-threatening event of arrhythmia with the intent to induce the public and medical community to continue the use of these Devices.

47.   Defendants concealed their deceptive practice to increase the sale and profit from their Devices.

48.   Plaintiff and the Class Members used the Devices for personal medical purposes.

49.   Plaintiff and the Class Members acted as a reasonable consumer would in light of all circumstances.

50.   Defendants have violated the Minnesota False Statements in Advertising Act, Minn. Stat. §325F.67 et seq., by (1) misrepresenting that the Devices were safe and not defective when in fact these products are unsafe because they were not operating properly, and (2) failing to disclose to consumers in their labeling or otherwise that the Devices were defective and not working properly due to the glassed feedthrough.

51.   Defendants knew, or through the exercise of reasonable care should have known, that the Devices were defective. Defendants' unfair and violative conduct, as described herein, is intentional, and Defendants intended and presently intend for consumers to rely on its unfair and misleading practices.

52.  Defendants' unfair conduct, as described herein, occurred in the course of trade or commerce.

53.  Defendants' conduct offends the public policy of Minnesota in that it violates a standard of conduct contained in an existing statute or common law doctrine that typically applies to such a situation. Specifically, it is unfair and misleading to represent to consumers that a medical device is safe when in fact the device is unsafe because it does not operate in the manner that it is advertised.

54.  Defendants' conduct, as described herein, has caused and continues to cause substantial injury to consumers, including Plaintiff and Class Members.

55.  Defendants' deceptive statements and omissions are material because they concern safety, which is among the types of information that consumers, including Plaintiff and the Class Members, would be expected to rely upon in making purchasing decisions.

56.  Defendants' deceptive statements and omissions have the capacity to deceive consumers, including Plaintiff and the Georgia Sub-Class, by inducing them to purchase the Devices.

57.  Defendants' deceptive statements and omissions succeeded in deceiving consumers, including Plaintiff and the Georgia Sub-Class, who relied upon the statements and omissions and were induced to buy and medically implant Defendants' defibrillator devices.

58.  Defendants' intended for consumers, including Plaintiff and the Class Members, to rely on the deceptive statements and omissions by purchasing the defective medical devices at issue.

59.  Defendants made the deceptive statements and omissions in the course of conduct involving trade or commerce.

60.  Plaintiff and the Class Members have been injured as a direct and proximate result of Defendants' deceptive conduct in violation of Minn. Stat. §325F.67 et seq., Plaintiff and the

Class Members paid for the medical implantation of the defibrillators at issue as a result of Defendants' deceptive statements and omissions.

61.  Through its deceptive practices, Defendants have improperly obtained and continue to improperly obtain and retain money from Plaintiff and the Class Members.

62.  The injury caused by Defendants' conduct is not outweighed by any countervailing benefits to consumers or to competition.

63.  The injury caused by Defendants' conduct could not reasonably have been avoided by consumers because they did not know and could not have known that the Devices were defective.

64.  Plaintiff therefore requests that this Court grant the relief enumerated below. Otherwise, Plaintiff and the Class Members may be irreparably harmed and/or denied an effective and complete remedy.

## SECOND CAUSE OF ACTION
**Violation of the Minnesota Deceptive Trade Practice Act**
Minn. Stat. §325D.44
**(On Behalf of Plaintiff and the Nationwide Class and Against All Defendants, Alternatively on Behalf of the Georgia Sub-Class)**

65.  Plaintiff incorporates Paragraphs 1-42, as though fully set forth herein.

66.  Defendants engaged and continue to engage in conduct that violates the Minnesota Deceptive Trade Practice statute, Minn. Stat. §325D.44 et seq. The violations include:

67.  Defendants violated Minn. Stat. §325D.44(5) by representing that the use of their Devices was safe and effective when in fact Defendants knew or should have known that it was neither.

68.  Defendants violated Minn. Stat. §325D.44(9) by advertising their Devices as medically safe and reliable by intentionally failing to disclose adverse events associated with the use of the product.

69.  Defendants violated Minn. Stat. §325D.44(13) by creating a likelihood of confusion by intentionally misrepresenting the safety and effectiveness of their Devices.

70.  Defendants scheme was carried out in Minnesota and affected Plaintiff who was implanted with a defective device.

71.  As a direct and proximate result of Defendants wrongful conduct, Plaintiff has sustained and will continue to sustain lasting pain and suffering. Including the possibility that during a life-threatening event of arrhythmia, improper energy output from the Device could cause him serious injury or death. Plaintiff is therefore entitled to statutory, compensatory and equitable damages and declaratory relief in an amount to be proven at trial.

72.  Defendants' acts constitute a breach of duty subjecting Defendants to civil liability for all damages that arise, under the theory of violation of the parallel duty under the Minnesota Deceptive Trade Practice Act.

### THIRD CAUSE OF ACTION
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Nationwide Class and Against All Defendants,**
**Alternatively on Behalf of the Georgia Sub-Class)**

73.  Plaintiff incorporates Paragraphs 1-42, as though fully set forth herein.

74.  Plaintiff and the Class bestowed benefits upon Defendants in the form of monies that were paid in exchange for Defendants' Devices. These benefits bestowed by Plaintiff were not a donation to Defendants as these monies were given for the purchase of the Devices.

75.  As a result of Defendants' wrongful and deceptive conduct alleged herein, Defendants knowingly and voluntarily accepted and retained wrongful benefits in the form of money paid by the Plaintiff and members of the Class when they purchased the Devices and had them medically implanted in their bodies.

76.  In so doing, Defendants acted with conscious disregard for the rights of Plaintiff and members of the Class.

77.  Plaintiff and the Class paid for Devices that were properly functioning, Devices whose sole function was keeping Plaintiff alive, and instead, Plaintiff and the Class Members were given defective and likely deadly products in exchange for their money.

78.  As a result of Defendants' wrongful conduct as alleged herein, Defendants have been unjustly enriched at the expense of, and to the detriment of, Plaintiff and members of the Class.

79.  Defendants' unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

80.  Under the common law doctrine of unjust enrichment, it is inequitable for Defendants to be permitted to retain the benefits it received, and is still receiving, without justification, from the false and deceptive manufacturing, labeling, and marketing of the Devices to Plaintiff and members of the Class.

81.  Defendants' retention of such funds under circumstances making it inequitable to do so, constitutes unjust enrichment.

82.  The financial benefits derived by Defendants rightfully belong to Plaintiff and members of the Class.

83.  Defendants should be compelled to disgorge in a common fund for the benefit of Plaintiff and members of the Class all wrongful or inequitable proceeds received by them.

84.  Finally, Plaintiff and members of the Class may assert an unjust enrichment claim even though a remedy at law may otherwise exist.

### FOURTH CAUSE OF ACTION
**Negligent Misrepresentation/Omission**
**(On Behalf of Plaintiff and the Nationwide Class and Against All Defendants,**
**Alternatively on Behalf of the Georgia Sub-Class)**

85.  Plaintiff incorporates Paragraphs 1-42, as though fully set forth herein.

86.  Through their advertising and the course of their regular business, Defendants made representations to Plaintiff and the Class Members concerning the function of the Devices.

87.  Defendants intended that the Plaintiff and the Class Members rely on their representations.

88.  Defendants' representations were material to Plaintiff and the Class Members' decision to utilize the Devices. Had Plaintiff known that these representations were false, Plaintiff would not have purchased the Devices.

89.  Defendants have a duty to provide accurate information to consumers regarding the hazards associated with the utilization of a glass feedthrough in the Devices, as detailed above.

90.  Defendants failed to fulfill its duty to accurately disclose in its advertising that the Devices with a glassed feedthrough had the possibility of not performing appropriately.

91.  Additionally, Defendants have a duty to not make false representations with respect to the Devices.

92.  Defendants failed to fulfill their duty or use ordinary care when they made false representations regarding the quality and safety of the Devices, as detailed above.

93.  Such failures to disclose on the part of Defendants amount to negligent omission, and the representations regarding the quality and safety of the product amount to negligent misrepresentation.

94.  Plaintiff and the other members of the Class reasonably relied upon such representations and omissions to their detriment.

95.  By reason thereof, Plaintiff and the other Class Members have suffered damages in an amount to be proven at trial.

**FIFTH CAUSE OF ACTION**
**Breach of Express Warranty**
**(On Behalf of Plaintiff and the Nationwide Class and Against All Defendants,**
**Alternatively on Behalf of the Georgia Sub-Class)**

96.  Plaintiff incorporates Paragraphs 1-42, as though fully set forth herein.

97.  As detailed above, Defendants, through its advertising and marketing expressly warranted that the Devices were safe and fit for the purposes intended, that they were of merchantable quality, and that they did not pose dangerous health risks.

98.  Moreover, the description for the Devices represents that the use of these medical devices serves to monitor and protect the individual from a life-threatening cardiac event. Such statements constitute an affirmation of fact or promise or a description of the product as being safe and not posing a dangerous health risk.

99.  Defendants breached this express warranty because the Devices are not safe. To the contrary, these defibrillators pose a serious and dangerous health risk because they deliver low or no energy output when high voltage therapy is needed to counteract an event of life-threatening arrhythmia.

100. Plaintiff and the other Class Members read and relied on these express warranties provided by Defendants in the description of the product and subsequent advertisements.

101. Defendants breached their express warranties because the defibrillators at issue are defective and not reasonably safe for their intended use.

102. Defendants knew or should have known that the Devices did not conform to their express warranties and representations and that, in fact, they are not safe and pose serious health risks because they are defective due to inappropriate activation of the Short Circuit Protection feature.

103. Plaintiff and the other Class Members read and relied on these express warranties provided by Defendants in the product description and subsequent advertisements.

104. Defendants' representations were made to induce Plaintiff and other Class Members to purchase the defibrillators at issue and were material factors in Plaintiff and other Class Members' decisions to purchase these products.

105. Plaintiff and the other Class Members have suffered harm on account of Defendants' breach of its express warranty regarding the fitness for use and safety of the Devices and are entitled to damages to be determined at trial.

**SIXTH CAUSE OF ACTION**
**Breach of Implied Warranty**
**(On Behalf of Plaintiff and the Nationwide Class and Against All Defendants,**
**Alternatively on Behalf of the Georgia Sub-Class)**

106. Plaintiff incorporates Paragraphs 1-42, as though fully set forth herein.

107. Because the Devices are defective in the output of high voltage therapy due to inappropriate activation of the Short Circuit Protection feature, they were not of the same quality as those generally acceptable in the trade and were not fit for the ordinary purposes for which such defibrillators are used.

108. Plaintiff and members of the Class purchased the Devices in reliance upon Defendants' skill and judgment and the implied warranties of fitness for the purpose.

109. The Devices were not altered by Plaintiff or members of the Class.

110. Plaintiff and members of the Classes were foreseeable users of the Devices.

111. Plaintiff and members of the Class used the Devices in the manner intended.

112. As alleged, Defendants' defibrillator product description did not disclose the possibility of low to no energy production in the need of high voltage therapy due to inappropriate activation of the Short Circuit Protection feature.

113. Devices did not measure up to the promises or facts stated in the marketing, advertisement, and communications by and from Defendants.

114. Defendants impliedly warranted that the Devices were merchantable, fit, and safe for prescribed use.

115. Defendants further impliedly warranted that the Devices were fit for the particular purposes for which they were intended and sold such as monitoring and regulating heart rate and rhythm.

116. Contrary to these implied warranties, Defendants' defibrillators were defective, unmerchantable, and unfit for their prescribed use when sold. Further, the defibrillators were unfit for the particular purpose for which they were sold.

117. By reason thereof, Plaintiff and the other Class Members have suffered damages in an amount to be proven at trial.

## SEVENTH CAUSE OF ACTION
### Strict Product Liability – Manufacturing Defect
### (On Behalf of Plaintiff and the Nationwide Class and Against All Defendants, Alternatively on Behalf of the Georgia Sub-Class)

118. Plaintiff incorporates Paragraphs 1-42, as though fully set forth herein.

119. Defendants manufactured and sold the Devices in the course of Defendants' business.

120. The Devices contained a manufacturing defect when they left the possession of Defendants. Specifically, the Devices differ from Defendants' intended result or from other lots of the same product line because they were defective in their energy output.

121. Plaintiff and the other Class Members used the Devices in a way that was reasonably foreseeable to and anticipated by Defendants.

122. As a result of the defects in the manufacture of the Devices, Plaintiff and the other Class Members suffered damages in an amount to be proven at trial.

## EIGHTH CAUSE OF ACTION
### Negligent Design Defect

21

**(On Behalf of Plaintiff and the Nationwide Class and Against All Defendants,
Alternatively on Behalf of the Georgia Sub-Class)**

123. Plaintiff incorporates Paragraphs 1-42, as though fully set forth herein.

124. Defendant owes a duty to Plaintiff and Class Members to design the Devices in a reasonable manner.

125. The designs of the Devices are defective and unreasonably useless, causing improper energy outputs during a life-threatening event of arrhythmia.

126. The design of the Devices caused them to be not fit, suitable, or safe for their intended purpose. The shortcomings of the devices and their improper energy output outweighed the benefits and rendered the devices to be unreasonably useless.

127. There are other ICDs and CRT-Ds that do not cause improper energy output.

128. The risk/benefit profile of the Devices was unreasonable, and the Devices should not have been sold in the market.

129. The Devices did not perform as a reasonable consumer would expect.

130. The Defendant's negligent design of the Devices and their improper energy output was the proximate cause of the damages to Plaintiffs and Class Members.

131. Plaintiff and Class Members suffered damages in the amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorney's fees, available under law.

**NINTH CAUSE OF ACTION**
**Negligent Failure to Warn**
**(On Behalf of Plaintiff and the Nationwide Class and Against All Defendants,
Alternatively on Behalf of the Georgia Sub-Class)**

132. Plaintiff incorporates Paragraphs 1-42, as though fully set forth herein.

133. Defendant owed Plaintiff and Class Members a duty of care and to warn consumers of any risks associated with the Devices.

134. Defendant knew or should have known of the improper energy output with the Devices but failed to warn Plaintiffs and Members of the Classes.

135. Defendant's breach of duty caused Plaintiffs and Class Members economic damages and injuries in the form of economic loss from the market value of the Devices at the time of purchasing to the value of purchasing devices prone to improper energy output.

136. Plaintiff and Class Members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as costs and attorney's fees, available under law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself and all others similarly situated, prays for judgment against the Defendants as to each and every count, including:

A. An order declaring this action to be a proper class action, appointing Plaintiff and his counsel to represent the Class/Sub-Class, and requiring Defendants to bear the costs of class notice;

B. An order enjoining Defendants from selling the Devices;

C. An order enjoining Defendants from suggesting or implying that the Devices are safe and effective for human utilization;

D. An order requiring Defendants to engage in a corrective advertising campaign and engage in any further necessary affirmative injunctive relief, such as continuing to recall existing Devices;

E. An order awarding declaratory relief and any further retrospective or prospective injunctive relief permitted by law or equity, including enjoining Defendants from

continuing the unlawful practices alleged herein, and injunctive relief to remedy Defendants' past conduct;

F.  An order requiring Defendants to pay restitution/damages to restore all funds acquired by means of any act or practice declared by this Court to be an unlawful, unfair, or fraudulent business act or practice, plus pre- and post-judgment interest thereon;

G.  An order requiring Defendants to disgorge any ill-gotten benefits received from Plaintiff and members of the Class/Sub-Class as a result of any wrongful or unlawful act or practice;

H.  An order requiring Defendants to pay all actual and statutory damages permitted under the counts alleged herein;

I.  An order awarding attorneys' fees and costs to Plaintiff and the Class/Sub-Class; and

J.  An order providing for all other such equitable relief as may be just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Dated: August 1st, 2023

Respectfully submitted,

Chad Alexander (ID #333098)
**SIEBEN POLK**
Eagan Woods Office Center
2600 Eagan Woods Drive, Suite 50
Eagan, MN 55121-1170
Tel: (651)-437-3148
Email: CAlexander@siebenpolklaw.com

-AND-

Paul J. Doolittle (*Pro Hac Vice* Forthcoming)
Blake G. Abbott (*Pro Hac Vice* Forthcoming)
**POULIN | WILLEY |
ANASTOPOULO, LLC**
32 Ann Street
Charleston, SC 29403
Tel: (803) 222-2222
Email: blake.abbott@poulinwilley.com
paul.doolittle@poulinwilley.com